| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| KAZI FOODS OF NEW YORK, INC., | ) Case No. 11-47551 |
| | ) |
| Debtor. | ) |
| | ) Judge Thomas J. Tucker |
| | ) |
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| KAZI FOODS OF ANNAPOLIS, INC., | ) Case No. 11-47556 |
| | ) |
| Debtor. | ) |
| | ) Judge Thomas J. Tucker |
| | ) |
| | ) |

## FIRST DAY JOINT MOTION FOR ENTRY OF AN ORDER AMENDING THE INTERIM ORDER GRANTING EXPEDITED RELIEF AND (A) AUTHORIZING USE OF UNENCUMBERED CASH OR, IN THE ALTERNATIVE, CASH COLLATERAL, AND (B) GRANTING ADEQUATE PROTECTION

NOW COME Kazi Foods of New York, Inc. ("KFNY") and Kazi Foods of Annapolis, Inc. ("KFMD", and collectively with KFNY, the "Debtors"), by and through their legal counsel, McDonald Hopkins PLC, and respectfully move the Court for the relief requested below:

1.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Fed. R. Bankr. P. 5005. This is a core proceeding. The voluntary petitions commencing the Debtors' chapter 11 cases were filed on March 21, 2011 (the "Petition Date"). The cases are now pending before this Court.

2.    This Motion arises under 11 U.S.C. §§ 105, 361, 363(c)(2) and 363(e), and Fed. R. Bankr. P. 4001(b). This Motion is filed under Fed. R. Bankr. P. 9014 and Local Rules 9013 and 4001-2.

1

3.     Prior to the filing of the instant case, Debtors' affiliates Kazi Foods of Michigan, Inc. and Kazi Foods of Florida, Inc. (the "Affiliates") each filed their own chapter 11 cases in this Court, which are being jointly administered in the matter of *In re Kazi Foods of Michigan, Inc., et al.* Case No. 11-43971-tjt (the "Affiliate Case").

4.     Contemporaneous with the filing of this Motion, Debtors' are also filing a motion to request joint administration of Debtors' cases with the Affiliate Case.

5.     As in the Affiliate Case, out of an abundance of caution, the Debtors request an order authorizing the Debtors to use their unencumbered cash in which General Electric Capital Business Asset Funding Corporation of Connecticut ("GE"), Colonial Pacific Leasing Corporation ("Colonial"), GE Capital Franchise Corporation, as servicer ("GECFC" together with Colonial and GE, the "GE Affiliates"), and YUM! Capital Funding Corp. ("YUM" and collectively with the GE Affiliates, the "Secured Creditors"), each may claim an interest.

6.     Since the Secured Creditors for the Debtors are effectively the same in both Debtors' cases and in the Affiliate Case, the Debtors' are requesting the Court to modify the *Interim Order Granting Expedited Relief and (A) Authorizing Use of Unencumbered Cash or, in the Alternative, Cash Collateral, and (B) Granting Adequate Protection* entered in the Affiliate Case on February 22, 2011 [Doc. 41] (the "Affiliate Cash Use Order") to apply to Debtors in these proceedings allowing the Debtors use of cash subject to the provisions of the proposed Order attached to this Motion as Exhibit A and in the amounts indicated on the budgets ("Budget") for the Debtors attached hereto as Exhibit B.

## RULE 4001 STATEMENT

7.     Pursuant to Fed. R. Bankr. P. 4001(b), the Debtors request an order authorizing continued use of their cash in which the Secured Creditors identified in paragraph 5 above claim

{2647758:5}

or may claim to hold an interest. The Debtors will use the cash to continue their operations and preserve the going-concern value of their assets.

8. The Debtors request interim authorization to use only the amount of cash that is necessary to avoid immediate and irreparable harm to their bankruptcy estates pending a final hearing, and the amounts indicated on the Budget attached hereto as <u>Exhibit B</u>, without material deviation, through a final hearing estimated to be through April 29, 2011.

9. If the relief is granted, the Debtors would be authorized to make the expenditures provided for in each budget monthly, and if necessary, to exceed the amounts set forth in each respective budget by as much as 15% of the total budget as amended by Debtors' CRO and as may be amended in the future with the agreement of the GE Affiliates. Any expenditures in excess of this authorization will require a further order of the Court after appropriate notice. Budget savings for the Debtors in any month would be carried over and used by the Debtors in subsequent months (*i.e.*, to account for changes in the timing of expenditures by the respective Debtors). After April 29, 2011, if a final hearing has not been held, the Debtors would be able to obtain use of any alleged cash collateral of the above-listed Secured Creditors by stipulation between the Debtors and the GE Affiliates, or by filing and serving an amended budget; if no objection to the terms of such amended budget is filed within 10 days after the service of such budget, the budget will be deemed to have been approved.

10. Such authorization being requested would include, but not be limited to, authorization (a) to pay the Debtors' normal and customary operating expenses, approved chapter 11 expenses, and approved prepetition and postpetition administrative claims; (b) to pay the fees of the United States Trustee pursuant to 28 U.S.C. § 1930; (c) to pay the fees and costs of the professionals retained pursuant to Court order; and (d) to make those payments they are

3

{2647758:5}

authorized to make pursuant to orders of the Court. The Debtors are authorized to make the expenditures provided for in the Budget, and if necessary, to exceed the amounts set forth in each respective Budget by as much as 15% of the total Budget.

11.     Notwithstanding the foregoing, Debtors will agree to limit any payments to insiders, including management fees to Kazi Management VI, LLC ("KMVI"), to overhead items approved by the GE Affiliates up to an aggregate and cumulative maximum of four percent (4%) of revenue (including those items already included in "corporate overhead" in the Budget). In the event of a dispute concerning payment of any such item, Debtors would be allowed to seek the Court's determination, on an expedited basis, on whether the proposed payment benefits the Debtors and does not violate any Subordination Agreements between the GE Affiliates and KMVI.

12.     As adequate protection for the use of Secured Creditor's cash collateral, the Debtors propose to: (a) grant Secured Creditors replacement liens in each of the respective Debtors' post-petition cash, accounts, equipment, inventory and the proceeds of the foregoing to the extent of the Debtors' utilization thereof; provided, however, that any and all such replacement liens would be of the same nature, character, validity, priority, dignity, extent and effect as the prepetition liens each of the Secured Creditors had, if any, in such collateral prior to the Petition Date and shall be without prejudice to the rights of the Debtors or any other party in interest to challenge the nature, character, validity, priority, dignity, extent and effect of any such liens or commence any proceeding under the Bankruptcy Code seeking a determination with respect thereto or seeking to avoid or set aside any such liens; and further provided that such replacement liens would specifically exclude avoidance actions under chapter 5 of the Bankruptcy Code and the proceeds thereof (collectively, the "Replacement Liens"); and (b)

4

{2647758:5}

provide Secured Creditors with copies of such financial or operating reports as filed with the Office of the U.S. Trustee.

13.　　The Debtors do not waive any right to contest the rights of the Secured Creditors to receive adequate protection.

14.　　In addition, any liens granted or cash to be paid to the Secured Parties would be limited to actual and demonstrated diminution in the value of such Secured Creditor's collateral.

## **BACKGROUND**

15.　　Since the Petition Date, the Debtors have continued in possession of their property and are managing their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

16.　　As of the Petition Date, the Debtors operate 74 separate Kentucky Fried Chicken ("KFC") franchise locations: 28 in New York, 28 in New Jersey, and 18 in Maryland (the "Restaurants").

### *A.　　The KFM Loan Agreement and Notes*

17.　　On or about June 26, 2006, KFNY, as borrower, and Citicorp, as lender, entered into that certain Loan Agreement (as thereafter amended from time to time, the "KFNY Loan Agreement" pursuant to which Citicorp agreed, subject to KFNY's compliance with the terms of that agreement, to make $33.5 million available to KFNY in order to finance KFNY's acquisition of 50 KFC restaurant locations (the "Acquisition Loan").

18.　　The Acquisition Loan is evidenced by, *inter alia,* certain promissory notes executed by KFNY in favor of Citicorp, including:　(i) that certain Acquisition Loan Note I, dated June 26, 2006, with an original principal balance of $4,900,000 (the "First Note"); (ii) that certain Acquisition Loan Note II, dated June 26, 2006, with an original principal balance of $4,300,000 (the "Second Note"), (iii) that certain Acquisition Loan Note III, dated June 26,

5

{2647758:5}

2006, with an original principal balance of $3,000,000 (the "Third Note"); (iv) that certain Acquisition Loan Note IV, dated June 26, 2006, with an original principal balance of $5,000,000 (the "Fourth Note"); (v) that certain Acquisition Loan Note V, dated June 26, 2006, with an original principal balance of $5,000,000 (the "Fifth Note"); (vi) that certain Acquisition Loan Note VI, dated June 26, 2006, with an original principal balance of $5,000,000 (the "Sixth Note"); (vii) that certain Acquisition Loan Note VII, dated June 26, 2006, with an original principal balance of $6,300,000 (the "Seventh Note"); and (viii) that certain Non-Revolving Line of Credit Note, dated June 26, 2006, with an original principal balance of $3,500,000 (the "Eighth Note"). (The First Note, the Second Note, the Third Note, the Fourth Note, the Fifth Note, the Sixth Note, the Seventh Note, and the Eighth Note are collectively, the "KFNY Notes".)

19.     Upon information and belief, on or about June 26, 2006, in order to provide security for KFNY's obligations under the KFNY Loan Agreements and the KFNY Notes, KFNY executed certain Mortgages, pursuant to which it, *inter alia,* granted Citicorp a security interest in certain personal and real property (collectively, the "KFNY Mortgages").

20.     In addition to the security interests granted pursuant to the KFNY Mortgages, on or about June 26, 2006, KFNY executed a certain Security Agreement (the "KFNY Security Agreement") pursuant to which it granted Citicorp additional security interests in all the personal property described in the agreement (collectively, the "KFNY Security Agreement Collateral") in order to secure the payment and performance of all indebtedness and obligations of KFNY to Citicorp.

21.     As of the Petition Date the combined outstanding balance of the KFNY Notes is approximately $32,773,514.41.

{2647758:5}

**B.      GE Affiliates, Title and Interest in the KFNY Loan Agreement, KFNY Notes, and the other KFNY Loan Documents**

22.      On or about August 4, 2008, Citicorp filed a *Certificate of Amendment of Certificate of Incorporation* with the office of the Secretary of State for the State of Delaware stating that Citicorp's Board of Directors gave unanimous written consent to amend the Certificate of Incorporation so as to rename the corporation "GE Capital Commercial Inc." and the GE Affiliates thereby became the successor in interest to Citicorp.

23.      On or about November 24, 2009, the GE Affiliates asserted that KFNY was in Default under the KFNY Loan Documents and on April 1, 2010, the GE Affiliates filed an action in the New York Supreme Court for the County of New York, Case No. 600833-10 seeking to enforce its rights under the KFNY Loan Documents.

**D.      The KFMD Secured Guaranty**

24.      On or about June 26, 2006, KFMD, as guarantor, entered into that certain Guaranty Agreement (the "KFMD Guaranty") whereby KFMD agreed to guaranty repayment of up to $5,650,000 of the obligations of KFNY to Citicorp under the KFNY Loan Agreement.

25.      On or about March 22, 1999, KFMD executed a certain Security Agreement (the "KFMD Security Agreement") pursuant to which it granted Citicorp a security interests in all the personal property described in the agreement (collectively, the "KFMD Security Agreement Collateral") in order to secure the payment and performance of all present and future indebtedness and obligations of KFMD to Citicorp.

**E.      Yum Capital Funding Loan**

26.      Upon information and belief, YUM holds a security interests in certain of KFMD's personal property located in Bryans Road, Maryland securing amounts owed under a certain Credit Agreement entered into by an between KFMD and YUM.

7

{2647758:5}

**F.** **Factors Related to Filing**

27.     Much like their Affiliates, the Debtors' chapter 11 filing's are driven by macroeconomic factors, regional economic factors, short-term liquidity problems and the failure to resolve a workable payment plan on loans to the GE Affiliates.  The Debtors find themselves in a situation in which their growth opportunity is limited by economic reality, since they have obligations to perform substantial capital expenditures under their agreements with Kentucky Fried Chicken Corporation ("KFCC") and have large secured debt, which in many cases greatly exceeds the value of the assets securing same.  The prolonged recession has greatly reduced customer traffic in its stores, driving down cash flow.  In short, the Company's year-to-date financials have fallen short of projections.  Restaurant margins have come under increased pressure with the impacts of winter weather, value promotions and the lack of consistent advertising by KFCC due to its litigation with the franchisees in 2010.  Towards the end of 2010 and continuing into 2011, commodity price increases have contributed to a decline in EBITDA (Earnings before Interest, Taxes, Depreciation and Amortization).  Although the Debtors continue to maintain a high level of operating efficiency, operating margins have not been sufficient to meet the restaurants' required CAPEX.

## USE OF CASH

28.     The Debtors request an expedited hearing for a modification of the Affiliate Cash Use Order authorizing the Debtors to use cash in which the Secured Creditors may claim an interest essentially in the same manner as already authorized for the Affiliates by the Affiliate Cash Use Order. The Debtors assert that none of the Secured Creditors listed above has a perfected security interest in the Debtors' cash or future sale proceeds generated from the

8

provision of services at the Restaurants operated by Debtors. The Debtors will suffer irreparable harm if they cannot utilize their cash on a preliminary basis, pending a final hearing on this Motion. This request relates to the ability to fund payroll for its employees and to continue to purchase and pay for necessary goods and services to operate its restaurants as contemplated being utilized substantially in accordance with the Budget (defined below) in the ordinary course as non-cash collateral items.

29. Reasonable notice of the request for an expedited hearing was given by telephonic, facsimile or e-mail notice to each of the Secured Creditors, the U.S. Trustee, and the Debtors' 20 largest unsecured creditors. The interests of a creditor wishing to object to the use of cash collateral are protected and preserved by the opportunity to object and be heard.

30. The Debtors need the immediate use of cash to meet the on-going expenses of operating their businesses, including making the next payroll for employees which will occur on or after March 24, 2011 in the approximate amount set forth in the Budget (the "Pending Payroll Obligations") and paying payroll taxes and related employee expenses, as well as payments to trade vendors for post-petition purchases, payment of rent, utility deposits, telephone, insurance, payments to other parties that supply goods and services to the Debtors post-petition and other necessary expenses associated with the operation of the Restaurants and the administration of the bankruptcy estates. These expenses are more specifically set forth in the Debtors' cash flow projections and Budget for the businesses attached hereto as Exhibit B. The Debtors have an immediate need to use approximately $11,454,212 between the Petition Date and April 29, 2011, in accordance with the attached Budget. Payment of all of these amounts are necessary to avoid immediate and irreparable harm to the Debtors' bankruptcy estates pending a hearing on the Motion and, to the extent that the Court characterizes the Debtors' cash and post-petition sale

9

receipts as cash collateral for some reason, the Debtors by this Motion also seek interim and final authority herein to utilize these proceeds for the benefit of the businesses, the bankruptcy estates and all constituents.

31.     The Debtors utilize the services of a nationally recognized payroll processing service, ADP, to facilitate payroll obligations to its employees. ADP requires good and available funds and, prior to the commencement of the bankruptcy cases, the Debtors transferred funds sufficient to cover the Pending Payroll Obligations. The Debtors seek authorization to pay prepetition portions of the Pending Payroll Obligations under a separate motion filed contemporaneously with this Motion.

32.     The Debtors anticipate the entry of a final order authorizing the use of cash collateral during the week ending April 29, 2011. If the Debtors are unable to timely fund the Pending Payroll Obligations, the Debtors are likely to lose their employees and be unable to hire new employees. In addition, the Debtors must have use of their cash to pay certain critical vendors for goods and services necessary to operate the Restaurants. Without the interim use of cash as proposed in the Budget, the Debtors will not be able to continue operations and pursue their strategies for maximizing value, and the interests of creditors and other parties in interest in these cases will be irreparably harmed. Therefore, cause exists to reduce notice of the hearing with respect to an interim order authorizing the use of the Debtors' cash.

33.     The Debtors have cash on hand and will generate cash from continuing sales at the Restaurants. As set forth in the Budget, the Debtors project that such cash will be sufficient to fund their chapter 11 administrative expenses, including post-petition operating expenses.

34.     As set forth in paragraph 12 above, the Debtors propose to grant Secured Creditors the Replacement Liens and will also prepare and provide to secured creditors copies of

10

financial or operating reports filed with the Office of the U.S. Trustee. The Debtors' proposed use of unencumbered cash and offer of adequate protection provides sufficient protection against the risk of the Debtors' use of cash and furthers the interests of all stakeholders in these bankruptcy cases. Additionally, the proposed use of cash will be subject to the same restrictions as previously agreed to with the GE Affiliates for the current Affiliate Cash Use Order.

35.    Prior to an interim or final hearing on the Motion for a final order authorizing use of cash, and in settlement of any and all matters raised in this Motion, the Debtors may enter into a stipulation or agreed order with parties claiming a security interest in cash collateral assets of the Debtors concerning the use of cash collateral, adequate protection and other related matters. In the event that the Debtors enter into any such stipulation, they will seek approval of the stipulation without further notice or hearing pursuant to Rule 4001(d)(4) of the Federal Rules of Bankruptcy Procedure, and **DEBTORS HEREBY GIVE NOTICE OF THEIR INTENTION TO SEEK APPROVAL OF ANY SUCH STIPULATION.**

36.    Pursuant to Local Rule 4001-2(d)(3), this Motion is accompanied by a proposed order as Exhibit A.

37.    Pursuant to Local Rule 4001-1(c)(6) and 4001(d) the Affidavit of Laura Marcero is attached hereto.

WHEREFORE, the Debtors move the Court for an order granting:

A.    An expedited hearing on this Motion;

B.    A modification of the Affiliate Cash Use Order authorizing the Debtors, on an interim basis, to use unencumbered cash, or in the alternative, cash collateral, through the period ending April 29, 2011, substantially consistent with the Budget attached to the Motion, and

11

{2647758:5}

otherwise applying the same terms and conditions set forth in the Affiliate Cash Use Order upon the Debtors herein;

C.     A final hearing on the Motion on or before April 29, 2011 for entry of a final order authorizing the Debtors use of its unencumbered cash, or if determined, cash collateral; and

D.     Such other and further relief as the Court deems just and equitable.

Respectfully submitted,

MCDONALD HOPKINS PLC

/s/  Stephen M. Gross
Stephen M. Gross (P35410)
Jeffrey S. Grasl (P62550)
Jayson B. Ruff (P69893)
Counsel to the Debtors
39533 Woodward Ave., Ste. 318
Bloomfield Hills, MI  48304
Phone:  248-646-5070
Email:  sgross@mcdonaldhopkins.com
        jgrasl@mcdonaldhopkins.com
        jruff@mcdonaldhopkins.com

March 21, 2011

{2647758:5}

# EXHIBIT A

**(proposed Order)**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **KAZI FOODS OF NEW YORK, INC.,** | ) Case No. 11-47551 |
| | ) |
| Debtor. | ) |
| | ) Judge Thomas J. Tucker |
| | ) |
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| **KAZI FOODS OF ANNAPOLIS, INC.,** | ) Case No. 11-47556 |
| | ) |
| Debtor. | ) |
| | ) Judge Thomas J. Tucker |
| | ) |
| | ) |

## ORDER AMENDING THE INTERIM ORDER GRANTING EXPEDITED RELIEF AND (A) AUTHORIZING USE OF UNENCUMBERED CASH OR, IN THE ALTERNATIVE, CASH COLLATERAL. AND (B) GRANTING ADEQUATE PROTECTION

This matter having come before the Court on the Debtors' *First Day Joint Motion for Entry of an Order Amending the Interim Order Granting Expedited Relief and (A) Authorizing Use of Unencumbered Cash or, in the Alternative, Cash Collateral and (B) Granting Adequate Protection* filed March 21, 2010 [Doc. __] (the "Motion"); the Court having held a hearing on the Motion on March ___, 2011 and having heard arguments of counsel on the relief requested in the Motion; the Court being fully advised in the premises, and after due deliberation and consideration and sufficient cause appearing therefore:

**THE COURT FINDS AND CONCLUDES THAT:**

A. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and reference from the District Court for the District of Michigan pursuant to 28 U.S.C. § 157. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

1

{2648207:4}

B.     Notice of the Motion and the hearing on the Motion was sufficient under the circumstances and constitutes due and sufficient notice thereof.

C.     Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors have retained possession of their assets and are authorized to continue the operations and management of their businesses as debtors in possession.

D.     No official committee of unsecured creditors has been appointed in the chapter 11 cases and no request has been made for appointment of a trustee or examiner.

E.     The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.

F.     The Debtors' use of cash and other assets is necessary to the continued viability of the Debtors' businesses.

G.     The Debtors assert that certain parties may have a lien on or security interests in certain non-cash assets of the Debtors, but have no interest in, or lien on, the Debtors' cash. The Court makes no finding on the issue for purposes of this Interim Order. Rather, to the extent the Debtors' cash constitutes cash collateral, the Debtors' use of such cash is, as set forth below, authorized and approved on an interim basis pursuant to the terms of this Interim Order.

H.     The Debtors have proposed to provide adequate protection to secured creditors for the use of (i) those assets of the Debtors that are collateral of secured creditors, and (ii) cash, but only if, and to the extent, the Court later determines that the Debtors' cash is cash collateral of a secured creditor. The Court makes no determination as to the priority, validity or extent of any lien asserted by any allegedly secured party, or the right of such secured party to adequate protection.

2

I.    Kazi Foods of Michigan, Inc. and Kazi Foods of Florida, Inc. are affiliates of Debtors and previously were granted authorization to use cash on an interim basis pursuant to the *Interim Order Granting Expedited Relief and (A) Authorizing Use of Unencumbered Cash or, in the Alternative, Cash Collateral, and (B) Granting Adequate Protection* entered February 22, 2011 [Doc. 41] (the "Cash Use Order").

J.    This Interim Order is intended to modify and amend the Cash Use Order to allow the use of cash by the Debtors subject to the provisions of this Interim Order.

K.    The evidence presented at the hearing substantiates the Debtors' request for use of cash and other assets.

L.    Capitalized terms used, but not otherwise defined herein, have the meanings given to them in the Motion.

**IT IS HEREBY ORDERED THAT:**

1.    The Debtors' Motion is granted.

2.    This Interim Order does hereby modify and amend the Cash Use Order to include as parties to the Cash Use Order the Debtors, Kazi Foods of New York, Inc. ("KFNY") and Kazi Foods of Maryland, Inc ("KFMD").

3.    Subject to the terms of this Order, the Debtors, KFNY and KFMD, hereby are authorized to use the cash generated by the operation of their businesses to continue to operate their businesses in the ordinary course of business through April 29, 2011, consistent with the Budget attached to the Motion as Exhibit B, as amended by the Debtors' CRO and as may be amended in the future with the agreement of the GE Affiliates; provided however, the Debtors are prohibited from paying management fees or making other transfers to insiders, including Kazi Management VI, LLC, ("KMVI"), except corporate overhead items approved by the GE

3

Affiliates up to a aggregate and cumulative maximum of four percent (4%) of revenue (including those items already included in the Budget attached to the Motion). In the event of a dispute concerning the payment of any such item, Debtors shall be entitled to seek a determination from the Court on an expedited basis on whether the proposed payment benefits the Debtors and does not violate Subordination Agreements between the GE Affiliates and KMVI. Such authorization shall include, but not be limited to, authorization: (a) to pay the Debtors' normal and customary operating expenses, approved chapter 11 expenses, and approved prepetition and postpetition administrative claims; (b) to pay the fees of the United States Trustee pursuant to 28 U.S.C. § 1930; (c) to pay the fees and costs of the professionals retained pursuant to Court order; and (d) to make those payments they are authorized to be made pursuant to orders of the Court. The Debtors are authorized to make the expenditures provided for in the Budget monthly, and if necessary, to exceed the amounts set forth in each respective Budget by as much as 15% of the total Budget.

4.      Subject to sections 361 and 363 of the Bankruptcy Code, as adequate protection for the Debtors' use of the Secured Creditors' collateral, secured creditors are hereby granted the following: (a) replacement liens, pursuant to 11 U.S.C. § 552, in the Debtors' postpetition assets of the same type and nature as those assets, subject to the prepetition liens of secured creditor (collectively, the "Replacement Liens"); provided, however, that any and all such Replacement Liens will be of the same nature, character, validity, priority, dignity, extent and effect as each secured creditor had, if any, in such collateral prior to the Petition Date and shall be without prejudice to the rights of the Debtors or any other party in interest to challenge the nature, character, validity, priority, dignity, extent and effect of any such liens or commence any proceeding under the Bankruptcy Code seeking a determination with respect thereto or seeking

4

to avoid or set aside any such liens; and <u>provided</u> <u>further that</u> such Replacement Liens shall specifically exclude all actions under chapter 5 of the Bankruptcy Code and the proceeds thereof; and (b) the right to receive copies of regular financial or operating reports, including those filed with the Office of the U.S. Trustee.

5.     Nothing in this Interim Order shall operate to waive any of the Debtors' rights to contest the rights of the GE Affiliates to receive adequate protection, nor any rights of the GE Affiliates to seek other and further adequate protection.

6.     Any Replacement Liens granted or cash to be paid to each of any the Secured Creditors, including the GE Affiliates, shall be limited to actual and demonstrated diminution in the value of their respective collateral.

7.     Subject to the other provisions of this Interim Order, the Replacement Liens granted herein shall be valid and fully perfected without any further action by the Debtors or secured creditors and without the execution or the recordation of any financing statements, security agreements, mortgages or other documents.   Notwithstanding the foregoing, each Secured Creditor is hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, account control agreements, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the Replacement Liens granted to them hereunder.

8.     For purposes of this Interim Order only, the Replacement Liens granted hereunder shall be subject to the allowed postpetition fees and expenses of professionals retained in the Debtors' chapter 11 cases and the fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930.

5

9.     The provisions of this Interim Order, as well as the Replacement Liens and security interests granted herein, shall continue in this and any subsequent case under the Bankruptcy Code.  The Replacement Liens and security interests shall maintain their priority as provided in this Interim Order, until the indebtedness of the Debtors to each secured creditor has been completely paid and satisfied, unless otherwise ordered by the Court.

10.     All excess cash generated by Debtors after payment of expenses pursuant to the Budget and this Order shall be retained by Debtors and not be transferred without an Order of this Court authorizing same, and shall be, and remain, subject to the claims, if any, of the GE Affiliates for payment as adequate protection.

11.     The Debtors shall provide the GE Affiliates with the following financial information:

  a.   Restaurant by restaurant budgets reasonably in conformance with GAAP within fourteen (14) days of the date hereof.

  b.   Budget to actual comparisons showing the Debtor's performance and compliance with the Budget, which shall be due the Thursday of each week for the prior calendar week.

  c.   Access to Debtors' facilities, book, and records, (in the original computerized format so as to permit full and organized access to accounting data) as well as its affiliates facilities where Debtors' records are located to enable the GE Affiliates to audit Debtor's records.

6

12.    This Interim Order is without prejudice to the rights of the parties to seek any further or different relief, or modification of this Interim Order, including, but not limited to, relief from the automatic stay.

13.    Except as expressly provided herein, the rights, claims, and interests of the Debtors, Secured Creditors, and all other parties in interest are hereby reserved.

14.    The Final Hearing, which shall be an evidentiary hearing if necessary, is scheduled for April __, 2011 at _____ a.m./p.m. before this Court.

The Debtors shall within one business day of its entry serve a copy of this Interim Order and the Motion on all parties entitled to notice under F.R. Bankr. P. 4001(d) and to any other party that has filed a request for notices with this Court and to any Statutory Committee after the same has been appointed, or such Statutory Committee's counsel, if the same shall have been appointed. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) McDonald Hopkins PLC, attorneys for the Debtors; 39533 Woodward Ave., Suite 318, Bloomfield Hills, Michigan 48304, Attention:  Stephen M. Gross (sgross@mcdonaldhopkins.com) (facsimile:  248-646-5075) and (b) ReedSmith, attorney for GE Affiliates, 10 South Wacker Drive, 40th Floor, Chicago, Illinois, Attention:  Alexander Terras (aterras@reedsmith.com) (facsimile:  312-207-6400) and (c) the Office of the United States Trustee for the Eastern District of Michigan, and shall be filed with the Clerk of the United States Bankruptcy Court for the Eastern District of Michigan, in each case to allow actual receipt by the foregoing no later than fourteen (14) days from the date hereof, except that an Official Committee may file objections within 14 days after it is served with this Interim Order; provided, however that the Objection heretofore filed by the GE Affiliates shall be deemed a timely filed Objection hereto.

7

15.     The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

16.     If no objection is timely filed, this Interim Order may become a final order, with the deletion that the use of cash be limited to the expenses in the Budget and that the Debtors' use of cash may continue after April 29, 2011.

{2648207:4}

# EXHIBIT B

**(Budget: Kazi Foods of New York, Inc. and Kazi Foods of Annapolis, Inc.)**

**Kazi Foods of New York, Inc.**
**Weekly Cash Flow Forecast**
**Management Estimates**
Week Ending

| | Budget 03/25/11 (1) | Budget 04/01/11 (2) | Budget 04/08/11 (3) | Budget 04/15/11 (4) | Budget 04/22/11 (5) | Budget 04/29/11 (6) | Budget 05/06/11 (7) | Budget 05/13/11 (8) | Budget 05/20/11 (9) | Budget 05/27/11 (10) | Budget 06/03/11 (11) | Budget 06/10/11 (12) | Budget 06/17/11 (13) | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance** | $0 | 84,095 | 680,842 | 501,774 | 781,405 | 227,203 | 160,039 | 433,314 | 778,654 | 129,462 | 93,695 | 297,919 | 623,013 | |
| **Total Change in Cash** | 84,094 | 596,748 | (179,068) | 279,631 | (554,202) | (67,164) | 273,275 | 345,340 | (649,192) | (35,767) | 204,224 | 325,094 | 754,511 | 1,377,524 |
| **Ending Cash Balance** | 84,095 | 680,842 | 501,774 | 781,405 | 227,203 | 160,039 | 433,314 | 778,654 | 129,462 | 93,695 | 297,919 | 623,013 | 1,377,524 | |
| **Net Sales** | 1,200,459 | 1,191,372 | 1,101,943 | 1,260,830 | 1,394,483 | 1,357,385 | 1,419,651 | 1,272,237 | 1,211,019 | 1,201,613 | 1,220,206 | 1,300,953 | 1,266,057 | 16,398,208 |
| **Receipts:** | | | | | | | | | | | | | | |
| Cash Sales Collection | 928,740 | 894,636 | 863,340 | 898,237 | 1,086,875 | 1,038,386 | 1,138,917 | 1,008,415 | 945,070 | 911,286 | 926,070 | 1,000,766 | 988,085 | 12,604,784 |
| Credit Card Sales | 336,995 | 324,646 | 321,594 | 332,943 | 393,557 | 377,849 | 405,827 | 363,742 | 340,693 | 333,008 | 337,677 | 365,154 | 355,591 | 4,589,477 |
| Total Sales | 1,265,735 | 1,219,282 | 1,184,934 | 1,229,181 | 1,480,432 | 1,416,215 | 1,544,745 | 1,372,157 | 1,285,963 | 1,244,294 | 1,263,747 | 1,365,921 | 1,321,656 | 17,194,261 |
| Sales Tax Collections | 93,181 | 92,476 | 85,534 | 97,867 | 108,242 | 105,362 | 110,195 | 96,753 | 94,000 | 93,271 | 94,714 | 100,981 | 98,273 | 1,272,881 |
| Other | | 616,403 | | | | | | | | | | | | 616,403 |
| **Total Receipts** | 1,358,917 | 1,928,161 | 1,270,469 | 1,327,046 | 1,588,673 | 1,521,577 | 1,654,940 | 1,470,910 | 1,379,963 | 1,337,565 | 1,358,461 | 1,466,902 | 1,419,929 | 19,083,515 |
| **Disbursements:** | | | | | | | | | | | | | | |
| Cost of Goods Sold | (413,513) | (410,502) | (379,688) | (434,435) | (480,487) | (467,704) | (489,159) | (436,365) | (417,272) | (414,031) | (420,437) | (448,280) | (436,236) | (5,650,209) |
| Payroll & Taxes | (562,736) | (562,086) | (435,269) | (435,470) | (435,289) | (502,784) | (489,159) | (435,289) | (432,789) | (150,764) | (148,470) | (435,289) | (148,470) | (4,331,863) |
| Benefits and Insurance | (8,711) | (3,548) | (8,128) | (9,568) | | (5,454) | (6,625) | (51,650) | (6,799) | (11,253) | (2,782) | (7,164) | (9,116) | (95,035) |
| Regional and Local Advertising | (46,534) | | | | | | | | | | | | | (307,520) |
| Rent Expense | (8) | | | | (127,107) | | (155,203) | (133,878) | (170,687) | (145,271) | (150,203) | | | (829,455) |
| Utilities | | (217,134) | (9,568) | (79,120) | (96,568) | (145,264) | (66,145) | (89,212) | (96,893) | (108,538) | (38,567) | (5,189) | (79,120) | (731,812) |
| Sales Tax | | | | (96,589) | (110,900) | (69,406) | (155,203) | (432,789) | (88,212) | (109,538) | | (52,457) | | (843,689) |
| Advertising | | | | (162,055) | (162,055) | | | (170,687) | | | | | | (332,742) |
| Royalties | | | | | (221,604) | | | (233,408) | | | | | | (455,012) |
| Controllable Expenses | (75,715) | (75,715) | (75,715) | (75,715) | (75,715) | (75,715) | (75,715) | (75,715) | (75,715) | (75,715) | (75,715) | (75,715) | (75,715) | (984,296) |
| Non-Controllable Expenses | (7,695) | (5,669) | (6,124) | (5,669) | (5,669) | (5,669) | (6,680) | (6,680) | (6,731) | (5,669) | (5,669) | (5,669) | (5,669) | (75,725) |
| Credit Card Fees | (6,672) | (6,621) | (6,124) | (7,007) | (7,007) | (7,544) | (7,480) | (6,731) | (6,679) | (6,678) | (6,782) | (7,230) | (7,036) | (91,137) |
| Other Occupancy | (26,447) | (26,447) | (26,447) | (26,447) | (26,447) | (26,447) | (26,447) | (26,447) | (26,447) | (26,447) | (26,447) | (26,447) | (26,447) | (343,815) |
| Maintenance Expense | (29,999) | (28,117) | (28,117) | (28,117) | (28,117) | (28,117) | (28,117) | (28,117) | (28,117) | (28,117) | (28,117) | (28,117) | (28,117) | (367,405) |
| Entity Level G&A | (8,572) | (4,900) | (4,900) | (4,900) | (4,900) | (4,900) | (4,900) | (4,900) | (4,900) | (4,900) | (4,900) | (4,900) | (4,900) | (67,372) |
| KMV Back Office Expense Budget | (35,163) | (29,784) | (27,549) | (31,521) | (34,862) | (33,935) | (31,806) | (30,275) | (30,040) | (32,524) | (31,651) | (32,524) | (33,651) | (415,107) |
| **Total Disbursements (Cash Disbursements)** | (1,221,935) | (1,088,526) | (1,006,221) | (849,527) | (2,129,987) | (1,372,939) | (1,048,831) | (1,112,682) | (1,811,267) | (1,360,444) | (938,435) | (1,128,920) | (852,477) | (15,922,194) |
| **Net Cash Flow from Operations** | 136,982 | 839,635 | 264,247 | 477,519 | (541,314) | 148,638 | 606,109 | 358,228 | (431,304) | (22,879) | 420,026 | 337,982 | 567,452 | 3,161,321 |
| **Cash Flows from Investing** | | | | | | | | | | | | | | |
| Maintenance CapEx | (12,888) | (12,888) | (12,888) | (12,888) | (12,888) | (12,888) | (12,888) | (12,888) | (12,888) | (12,888) | (12,888) | (12,888) | (12,888) | (167,540) |
| Additional Capex | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net Cash Flow from Investing** | (12,888) | (12,888) | (12,888) | (12,888) | (12,888) | (12,888) | (12,888) | (12,888) | (12,888) | (12,888) | (12,888) | (12,888) | (12,888) | (167,540) |
| **Cash Flows from Financing** | | | | | | | | | | | | | | |
| GE Capital Payment | | (230,000) | | | | (202,914) | | | | | (202,914) | | | (635,829) |
| **Net Cash Flow from Financing** | | (230,000) | | | | (202,914) | | | | | (202,914) | | | (635,829) |
| **Non-Recurring Items (including BK)** | | | | | | | | | | | | | | |
| Professional Fees | | | | (185,000) | | | | | (205,000) | | | | (160,000) | (550,000) |
| PACA/503b Claims | | | (430,428) | | | | | | | | | | | (430,428) |
| Utility Adequate Assurance Payments | | | | | | | (319,947) | | | | | | | (319,947) |
| Hostage Payments | | | | | | | | | | | | | | (40,000) |
| Deposit Recapture | (40,000) | | | | | | | | | | | | 359,947 | 359,947 |
| **Total Non-Recurring** | (40,000) | | (430,428) | (185,000) | | | (319,947) | | (205,000) | | | | 199,947 | (980,428) |
| **Total Change in Cash** | 84,094 | 596,748 | (179,068) | 279,631 | (554,202) | (67,164) | 273,275 | 345,340 | (649,192) | (35,767) | 204,224 | 325,094 | 754,511 | 1,377,524 |

1) Beginning balance reflects bank balance
2) Assumed 2% increase in cost of goods sold as a result of rising commodity costs
3) Other sales represents estimated Pepsi rebate
4) Professional fees allocated to the Michigan, Florida, New York and Maryland entities bases on revenue
5) Professional fees assumed to be paid at 100% one month in arrears
6) Assumed deposits and adequate assurance payments are applied to outstanding balances

Projections prepared based on Management's data

**Kaaf Foods of Annapolis, Inc.**
**Weekly Cash Flow Forecast**
**Management Estimates**

| Week Ending | Budget 1 02/25/11 | Budget 2 04/01/11 | Budget 3 04/08/11 | Budget 4 04/15/11 | Budget 5 04/22/11 | Budget 6 04/29/11 | Budget 7 05/06/11 | Budget 8 05/13/11 | Budget 9 05/20/11 | Budget 10 05/27/11 | Budget 11 06/03/11 | Budget 12 06/10/11 | Budget 13 06/17/11 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance** | 0 | 210,206 | 79,499 | 186,067 | 77,394 | 96,728 | 106,818 | 235,474 | 229,696 | 15,233 | 209,646 | 349,002 | 377,778 | 0 |
| **Total Change in Cash** | 210,206 | (130,706) | 106,568 | (108,673) | 19,334 | 10,090 | 128,656 | (5,779) | (214,462) | 194,412 | 139,356 | 28,777 | 279,695 | 657,474 |
| **Ending Cash** | 210,206 | 79,499 | 186,067 | 77,394 | 96,728 | 106,818 | 235,474 | 229,696 | 15,233 | 209,646 | 349,002 | 377,778 | 657,474 | 657,474 |
| **Net Sales** | 388,972 | 372,722 | 353,735 | 392,044 | 416,525 | 408,194 | 417,085 | 392,531 | 374,935 | 381,580 | 389,010 | 392,517 | 385,418 | 5,045,667 |
| **Receipts:** | | | | | | | | | | | | | | |
| Cash Sales Collection | 278,572 | 270,708 | 280,762 | 280,648 | 315,159 | 307,519 | 324,748 | 303,696 | 285,670 | 280,753 | 293,225 | 298,139 | 288,752 | 3,808,328 |
| Credit Card Sales | 105,042 | 103,732 | 104,110 | 107,043 | 119,045 | 116,552 | 120,649 | 112,753 | 107,602 | 106,816 | 110,558 | 112,818 | 110,249 | 1,436,668 |
| **Total Sales** | 383,613 | 374,440 | 384,872 | 387,691 | 434,204 | 424,071 | 445,397 | 416,448 | 393,272 | 387,568 | 403,782 | 410,957 | 398,991 | 5,245,296 |
| Sales Tax Collections | 22,214 | 22,439 | 21,296 | 23,603 | 25,076 | 24,575 | 25,110 | 23,556 | 22,573 | 22,973 | 23,420 | 23,631 | 23,324 | 303,766 |
| Other | 198,129 | | | | | | | | | | | | | 198,129 |
| **Total Receipts** | 603,956 | 396,879 | 406,168 | 411,294 | 459,280 | 448,646 | 470,507 | 440,194 | 415,844 | 410,540 | 427,202 | 434,588 | 422,184 | 5,747,194 |
| **Disbursements:** | | | | | | | | | | | | | | |
| Cost of Goods Sold | (120,617) | (131,945) | (125,223) | (138,764) | (147,451) | (144,501) | (147,649) | (139,088) | (132,738) | (135,080) | (137,710) | (138,952) | (135,439) | (1,788,117) |
| Payroll & Taxes | (30,000) | (130,291) | | (210,242) | (220,962) | | (259,685) | | (99,384) | | | | | (1,140,644) |
| Benefits and Insurance | (10,690) | (2,981) | (7,440) | (2,881) | (18,382) | (6,962) | (7,440) | (8,633) | (10,473) | (10,690) | (2,881) | (2,983) | (10,473) | (95,353) |
| Regional and Local Advertising | (38,789) | | (7,440) | | | | | | (79,830) | (31,896) | (92,035) | (34,349) | | (118,026) |
| Rent Expense | | (92,035) | | | (92,035) | (92,035) | (92,035) | | | | | (92,035) | | (276,165) |
| Utilities | (11,121) | (52) | (8,498) | (2,881) | (55,626) | (22,391) | (8,499) | | (40,318) | | (2,035) | | | (236,297) |
| Sales Tax | (96,712) | | | (96,577) | (96,577) | | | (102,425) | (102,425) | | | | | (295,714) |
| Advertising | | | | | (59,432) | | | | (99,384) | | | | | (99,384) |
| Royalties | | | | | | | (55,820) | (63,031) | (63,031) | | | | | (122,483) |
| Controllable Expenses | (3,640) | (1,879) | (1,879) | (1,879) | (1,879) | (1,879) | (1,879) | (8,494) | (8,494) | (8,494) | (8,494) | (8,494) | (8,494) | (110,426) |
| Non-Controllable Expenses | (3,905) | (3,243) | (3,077) | (3,411) | (3,624) | (3,551) | (3,629) | (1,879) | (1,879) | (1,879) | (1,879) | (1,879) | (1,879) | (26,448) |
| Credit Card Fees | (3,210) | (3,243) | (3,077) | (3,411) | (3,624) | (3,551) | (3,629) | (3,418) | (3,262) | (3,320) | (3,384) | (3,416) | (3,365) | (43,897) |
| Other Occupancy Costs | | (9,532) | (9,532) | (9,532) | (9,532) | (4,675) | (4,675) | (4,675) | (4,675) | (4,675) | (4,675) | (4,675) | (4,675) | (67,556) |
| Maintenance Expense | (11,414) | (9,532) | (9,532) | (9,532) | (9,532) | (9,532) | (9,532) | (9,532) | (9,532) | (9,532) | (9,532) | (9,532) | (9,532) | (125,792) |
| Entity Level G&A | (700) | (3,486) | (3,309) | (3,657) | (3,886) | (2,450) | (2,450) | (2,450) | (2,450) | (2,450) | (2,450) | (2,450) | (2,450) | (31,150) |
| KMVI Back Office Expense Budget | (8,603) | (3,486) | (3,309) | (3,657) | (3,886) | (3,816) | (3,901) | (3,675) | (3,507) | (3,569) | (3,639) | (3,671) | (3,605) | (52,348) |
| **Total Disbursements from Operations** | (349,608) | (453,443) | (247,210) | (370,396) | (435,803) | (419,772) | (337,708) | (441,830) | (562,186) | (211,985) | (269,062) | (401,669) | (216,048) | (4,623,380) |
| **Net Cash Flow from Operations** | 254,348 | (56,564) | 158,958 | 40,898 | 23,477 | 28,874 | 132,799 | (1,636) | (146,342) | 198,555 | 158,140 | 32,919 | 206,136 | 1,118,815 |
| **Cash Flows from Investing** | | | | | | | | | | | | | | |
| Maintenance CapEx | (4,142) | (4,142) | (4,142) | (4,142) | (4,142) | (4,142) | (4,142) | (4,142) | (4,142) | (4,142) | (4,142) | (4,142) | (4,142) | (53,852) |
| Additional Capex | | | | | | | | | | | | | | |
| **Net Cash Flow from Investing** | (4,142) | (4,142) | (4,142) | (4,142) | (4,142) | (4,142) | (4,142) | (4,142) | (4,142) | (4,142) | (4,142) | (4,142) | (4,142) | (53,852) |
| **Cash Flows from Financing** | | | | | | | | | | | | | | |
| GE Capital Payment | | (70,000) | | (14,642) | | (14,642) | | | | | (14,642) | | | (99,284) |
| **Net Cash Flow from Financing** | | (70,000) | | (14,642) | | (14,642) | | | | | (14,642) | | | (99,284) |
| **Non-Recurring Items (including BK)** | | | | | | | | | | | | | | |
| Professional Fees | | | | (67,784) | | | | | (63,976) | | | | (49,943) | (171,000) |
| PACA/503B9 Claims | | (136,500) | | | | | | | | | | | | (136,500) |
| Utility Adequate Assurance Payments | | | | (87,645) | | | | | | | | | | (87,645) |
| Hostage Payments | (40,000) | | | | | | | | | | | | | (40,000) |
| Deposit Receipts | | | | | | | | | | | | | 127,645 | 127,645 |
| **Total Non-Recurring** | (40,000) | (136,500) | | (145,429) | | | | | (63,976) | | | | 77,702 | (306,265) |
| **Total Change in Cash** | 210,206 | (130,706) | 106,568 | (108,673) | 19,334 | 10,090 | 128,656 | (5,779) | (214,462) | 194,412 | 139,356 | 28,777 | 279,695 | 657,474 |

1) Beginning balance reflects bank balance
2) Assumed 2% increase in cost of goods sold as a result of rising commodity costs
3) Other sales represents estimated Pepsi rebate
4) Professional fees allocated to the Michigan, Florida, New York and Maryland entities based on revenue
5) Professional fees assumed to be paid at 100% one month in arrears
6) Assumed deposits and adequate assurance payments are applied to outstanding balances

Projections prepared based on Management's data

# EXHIBIT C

**(Affidavit of Laura A. Marcero)**

| | |
|---|---|
| **In re:** | ) Chapter 11 |
| | ) |
| **KAZI FOODS OF NEW YORK, INC.,** | ) Case No. 11-47551 |
| | ) |
| Debtor. | ) |
| | ) Judge Thomas J. Tucker |
| | ) |
| | ) |
| **In re:** | ) Chapter 11 |
| | ) |
| **KAZI FOODS OF ANNAPOLIS, INC.,** | ) Case No. 11-47556 |
| | ) |
| Debtor. | ) |
| | ) Judge Thomas J. Tucker |
| | ) |
| | ) |

## AFFIDAVIT

Laura A. Marcero , being duly sworn states as follows:

1.     That if called to testify, I have personal knowledge of and am capable of testifying to the following:

    A.     That I am the Chief Restructuring Officer of the Debtors.

    B.     That I am one of the primary individuals responsible for the financial affairs of the Debtors.

    D.     That the Debtors will request through its counsel, McDonald Hopkins PLC, authority to use cash for continued support of the Debtors' ordinary course operations.

    E.     That the Debtors are requesting, through their said counsel, an interim order authorizing the use of unencumbered cash, or in the alternative, cash collateral, in order to avoid immediate and irreparable harm to the estate.

F.    That the amount and use of funds that are needed to permit the Debtors to operate through April 30, 2011 are itemized on Exhibit 1 hereto and indicate that the Debtors need to use $ 11,454,212 during said period in order to avoid immediate and irreparable harm.

2.    Further Deponent sayeth not.

_____
LAURA A. MARCERO

Subscribed and sworn to before
me this 18th day of March, 2011

_____
Shelly O Harrow, Notary Public
Oakland County, MI
My Comm. Exps.: 10/5/2014

Shelly Harrow, Notary Public
State of Michigan, County of Oakland
My Commission Expires 10/5/2014
Acting in the County of Oakland